UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

795208
PHELAN HALLINAN DIAMOND & JONES, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
856-813-5500
Attorneys for WELLS FARGO BANK, NA

In Re:

AUDREY P COOPER
JOE G ORTIZ

Case No:  17-21975 - JKS

Hearing Date: 07/27/2017

Judge:  JOHN K. SHERWOOD

Chapter:  13

# CERTIFICATION OF PARTICIPANT
## REGARDING MOTION FOR RELIEF

I HEREBY CERTIFY that with respect to the copy of the captioned Motion for Relief submitted to the Court, the following conditions have been met:

(a)   The Affiant has acknowledged the genuineness of the original signature;

(b)   The original document was executed in completed form prior to facsimile transmission;

(c)   The document or a copy with an original signature affixed to it will be obtained by the Participant within seven business days after the date the document or pleading with the facsimile signature was electronically filed with the Court; and

(d)   In accordance with the Court's *Administrative Procedures for Filing, Signing, and Verifying Documents by Electronic Means* (collectively, the "Administrative Procedures"), at paragraph II C.2, the document containing the original signature will be maintained in paper form by the Participant for a period not less than seven years from the date of closure of the case or proceeding in which the document is filed; and that upon required the original document must be provided to other parties or the Court for review.

/s/ Nicholas V. Rogers
Nicholas V. Rogers, Esq.
Phelan Hallinan Diamond & Jones, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
Tel: 856-813-5500 Ext. 42689
Fax: 856-813-5501
Email: nicholas.rogers@phelanhallinan.com

**NJID 795208**
PHELAN HALLINAN DIAMOND & JONES, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
856-813-5500
Attorneys for WELLS FARGO BANK, NA

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
|     AUDREY P COOPER | | |
|     JOE G ORTIZ | : | CASE NO.  17-21975-JKS |
|   Debtors | | |
| | : | **CERTIFICATION OF** |
| | : | **Nicholas V. Rogers, Esq.** |
| | : | **SEEKING IN REM RELIEF** |
| | : | **FROM THE AUTOMATIC STAY** |
| | : | **PURSUANT TO 11 U.S.C. §362** |
| | : | **(d)(4) AND RELIEF FROM** |
| | : | **CO-DEBTOR STAY** |
| | : | **PURSUANT TO 11 U.S.C.** |
| | : | **§1301(c)** |

I, Nicholas V. Rogers, Esq., hereby certify that:

1.      I am an attorney at law admitted to practice in the State of New Jersey and I am the attorney for WELLS FARGO BANK, NA (Movant) in the above captioned matter.

2.      On February 23, 2009, AUDREY COOPER and PATRICIA BROWN, executed to MORTGAGE MASTER, INC. an obligation (NOTE), to secure the sum of $369,862.00, payable on March 1, 2039, with the initial rate of interest of 5% per annum, payable by payments of $1,985.50 per month for interest and principal.  The Note further provides for a late charge of 4 percent for any payment not received 15 days from the date due.    Attached hereto and marked as

Exhibit A is a copy of the Note

3.      To secure the payment of the obligation described in Paragraph 2, AUDREY
COOPER and PATRICIA BROWN, executed to MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR MORTGAGE MASTER, INC., ITS SUCCESSORS AND
ASSIGNS, a NON Purchase Money Mortgage  on the same date as the Note, and thereby conveyed
to it, in fee the land hereinafter described, on the express condition that such conveyance should be
void if payment should be made at the time and times, and in the manner described in the
obligation. The Mortgage was recorded in the Office of the Clerk of BERGEN County, in Book
00049, Page 0628.  The Mortgage was recorded March 12, 2009.   Attached hereto and marked as
Exhibit B is a copy of the Mortgage

4.      The Mortgage was assigned on May 22, 2012, from MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INCORPORATED, AS NOMINEE FOR MORTGAGE MASTER,
INC., ITS SUCCESSORS AND ASSIGNS to WELLS FARGO BANK, NA.  The assignment was
recorded June 11, 2012 in Book 1063, Page 1909.   A copy of the  Assignment  is  attached  as
Exhibit C

5.      The Mortgage was modified by a Mortgage Modification Agreement between
WELLS FARGO BANK, NA and AUDREY COOPER and PATRICIA BROWN, with an
effective date of September 1, 2011.  A copy of the Mortgage Modification Agreement is attached
as Exhibit D

6.      On November 16, 2012, based on failure of debtor to make mortgage payments,
WELLS FARGO BANK, NA, filed a foreclosure action in the New Jersey Superior Court.

7.      WELLS FARGO BANK, NA, obtained Final Judgment and Writ of Execution from

the New Jersey Superior Court March 3, 2015.      A copy of the Final Judgment is attached as
Exhibit E.

8.      On January 5, 2016, AUDREY P COOPER AND JOE G ORTIZ filed for protection
under the Bankruptcy Code, Chapter 13, Case No. 16-10180-JKS. Movant obtained relief from the
automatic stay on September 12, 2016. That case was subsequently dismissed on September 27,
2016.

9.      On October 1, 2016, AUDREY P COOPER AND JOE G ORTIZ filed for protection
under the Bankruptcy Code, Chapter 13, Case No. 16-28882-JKS.  That case was subsequently
dismissed on April 20, 2017.

10.      On June 10, 2017, AUDREY P COOPER AND JOE G ORTIZ filed for protection
under the Bankruptcy Code, Chapter 13, Case No. 17-21975-JKS. That case is still pending.

11.      While the current case is the third bankruptcy petition pending in twelve months for
AUDREY P COOPER AND JOE G ORTIZ, the Co-Debtor, PATRICIA BROWN has not filed any
bankruptcies.

12.      The current bankruptcy is nothing more than another attempt of the debtors to delay
the foreclosure sale. Debtors, AUDREY P COOPER AND JOE G ORTIZ, have systematically
delayed Movant's ability to enforce its contractual rights.

13.      Movant has another sheriff's sale scheduled for September 1, 2017.  Movant does
not wish to have its sale stayed again due to another frivolous bankruptcy filing.

14.      There is currently a Motion to Impose Automatic Stay hearing scheduled for July
13, 2017.

15.      According to the Debtors' Chapter 13 Plan, the Debtors intend to enter into a loan

modification with no alternative treatment of arrears.  This is extremely unlikely since the loan is

contractually due for January 1, 2013 with an estimate of arrears in the amount of $157,919.37.

16.    The filing of the current bankruptcy case violates 11 U.S.C. §362(d)(4) as this filing is

part of a scheme to delay, hinder, or defraud creditors.

17.    Movant has cause to have the Automatic Stay terminated as to permit Movant to

complete its right to possession of, or title to, said premises (said actions include but are not limited to

foreclosure on its mortgage, sale proceedings, recording of a Sheriff's deed, and eviction proceedings).

18.    Movant has cause for the entry of an In Rem Relief Order as provided by 11 U.S.C.

§362(d)(4) to prevent any further delays that may occur with the filing of a bankruptcy petition by an

occupant or tenant of the property.

19.    In an abundance of caution, WELLS FARGO BANK, NA, respectfully requests relief

from the co-debtor stay as to PATRICIA BROWN pursuant to 11 USC section 1301(c).


I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing statements made by me are false, I am subject to punishment.


Dated: July 3, 2017

/s/ Nicholas V. Rogers
Nicholas V. Rogers, Esq.
Phelan Hallinan Diamond & Jones, PC
400 Fellowship Road, Suite 100
Mt. Laurel, NJ 08054
Tel: 856-813-5500 Ext. 42689
Fax: 856-813-5501
Email: nicholas.rogers@phelanhallinan.com

**Exhibit A**

MIN:                                                      Loan Number:

# NOTE

| FHA Case No. |
|---|
| --- ------- --- |

FEBRUARY 23, 2009              TEANECK                    NEW JERSEY
[Date]                         [City]                     [State]

608 MARTENSE AVENUE, TEANECK, NEW JERSEY 07666
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means MORTGAGE MASTER, INC, A MASSACHUSETTS CORPORATION
and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

Inr eturn for a loan received from Lender, Borrower promises to pay the principal sum of THREE HUNDRED SIXTY-NINE THOUSAND EIGHT HUNDRED SIXTY-TWO AND 00/100                        **Dollars (U.S. $ 369,862.00          )**, plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND 000/1000                        percent
(      5.000 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on APRIL 1, 2009                        . Any principal and interest remaining on the 1st day of MARCH, 2039                        , will be due on that date, which is called the "maturity date."

**(B) Place**

Payment shall he made at 102 ELM STREET 3RD FLOOR, WALPOLE, MASSACHUSETTS 02081
. or at such place
as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,985.50                        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 05/01/08                        Page 1 of 3                        DocMagic eFORMS 800-649-1362
                                                                            www.docmagic.com

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                    percent (    4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 05/01/08                        Page 2 of 3                        DocMagic eFormns 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
AUDREY COOPER                -Borrower

_____ (Seal)
PATRICIA BROWN              -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

PAY TO THE ORDER OF WELLS FARGO BANK, NA
WITHOUT RECOURSE
BY: Lisa m. Goble
MORTGAGE MASTER INC.
LISA M. GOBLE
DIRECTOR OF OPERATIONS

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By _____
Scott M. Swanson
Assistant Vice President

*[Sign Original Only]*

NEW JERSEY - FHA FIXED RATE NOTE
NJFHA.NTE 05/01/08                    Page 3 of 3            DocMagic *eForms* 800-649-1362
                                                            www.docmagic.com

**<u>Exhibit B</u>**

09-019391    Mortgage
V  Bk: 00049  Pg: 0628-0636Rec. Fee $110.00
Kathleen A. Donovan, Bergen County Clerk
Recorded 03/12/2009  11:30:13 AM

After Recording Return To:
MORTGAGE MASTER, INC
102 ELM STREET 3RD FLOOR
WALPOLE, MASSACHUSETTS 02081
Loan Number:

This Instrument Prepared By:

——————————— [Space Above This Line For Recording Data] ——————————

# MORTGAGE

FHA CASE NO.

MIN:

THIS MORTGAGE ("Security Instrument") is given on   FEBRUARY 23, 2009
The mortgagor is  AUDREY COOPER AND PATRICIA BROWN BOTH UNMARRIED

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as mortgagee. MERS
is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has a mailing address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS.  MORTGAGE MASTER, INC, A MASSACHUSETTS
CORPORATION                                                               ("Lender")
is organized and existing under the laws of   MASSACHUSETTS
and has a principal office and mailing address of   102 ELM STREET 3RD FLOOR, WALPOLE,
MASSACHUSETTS 02081
Borrower owes Lender the principal sum of  THREE HUNDRED SIXTY-NINE THOUSAND
EIGHT HUNDRED SIXTY-TWO AND 00/100      Dollars (U.S. $ 369,862.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on   MARCH 1, 2039      .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants
and agreements under this Security Instrument and the Note.  This Security Instrument and the Note secured hereby
are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as
defined in New Jersey Laws 1985, ch. 353, § 1 et seq., and upon such modification, shall have the benefit of the lien
priority provisions of that law.   The maximum principal amount secured by this Security Instrument is
$ 369,862.00        . For these purposes, Borrower does hereby mortgage, grant and convey to MERS
(solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the
following described property located in   BERGEN                          County, New Jersey:

FHA NEW JERSEY MORTGAGE - MERS
NJMTGZ.FHA  11/01/08                              Page 1 of 8                    DocMagic eForms 800-649-1362
                                                                                www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".

which has the address of                          608 MARTENSE AVENUE
                                                        [Street]
                  TEANECK              , New Jersey         07666        ("Property Address"):
                   [City]                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly
payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and
special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the
Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a
mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in
which such premium would have been required if Lender still held the Security Instrument, each monthly payment
shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary,
or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,
in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items
are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the
maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures
Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended
from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements
or disbursements before the Borrower's payments are available in the account may not be based on amounts due for
the mortgage insurance premium.

FHA NEW JERSEY MORTGAGE - MERS
NJMTGZ.FHA 11/01/08                          Page 2 of 8                    DocMagic *eForms* 800-649-1362
                                                                           www.docmagic.com

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
THIRD, to interest due under the Note;
FOURTH, to amortization of the principal of the Note; and
FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statementst o Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA NEW JERSEY MORTGAGE - MERS
NJMTGZ.FHA 11/01/08                                    Page 3 of 8                          DocMagic *eForms* 800-549-1362
                                                                                            www.docmagic.com

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under thisp aragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.**  Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

(a)  **Default.**  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)  **Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)  **No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within    60 DAYS
from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to    60 DAYS                    from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA NEW JERSEY MORTGAGE - MERS
NJMTGZ.FHA  11/01/08                              Page 5 of 8                    DocMagic *eForms* 800-549-1362
                                                                                www.docmagic.com

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agrees as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding, and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.**

**If the Lender's interest in this Security Instrument ish eld by the Secretary, and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

FHA NEW JERSEY MORTGAGE - MERS
NJMTGZ.FHA 11/01/08                    Page 6 of 8                    DocMagic *eRorms* 800-649-1362
www.docmagic.com

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider                    ☐ Graduated Payment Rider          ☐ Growing Equity Rider

☐ Planned Unit Development Rider       ☐ Adjustable Rate Rider            ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider           ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____(Seal)      _____(Seal)
AUDREY COOPER          -Borrower      PATRICIA BROWN          -Borrower


_____(Seal)      _____(Seal)
                       -Borrower                             -Borrower


_____(Seal)      _____(Seal)
                       -Borrower                             -Borrower


JOHN J. GOLDING
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 11/27/2011


Signed, sealed and delivered in the presence of:

_____              _____



_____              _____



**TICOR TITLE INSURANCE COMPANY**

**SCHEDULE A**
**(Continued)**
**LEGAL DESCRIPTION**

File No.

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Teaneck, County of Bergen and State of New Jersey, and being more particularly described as follows:

BEING known and designated as Lot 63 & 64 in Block 5 as shown on map entitled "Map of Reta Park, Teaneck, Bergen Co, N.J." filed on October 25, 1924 on Map No. 1945.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 7 in Block 602 on the Township of Teaneck Tax Map.

BEGINNING at a point in the southwesterly sideline of Martense Avenue, 50' wide, therein distant 240.00' as measured southeasterly along the same, from its intersection with the southeasterly sideline of Martense Avenue, 50' wide, and from said point of BEGINNING, thence running;

1) Along the southwesterly sideline of Martense Avenue, S.59 degrees 22' 00" East, a distance of 40.00' to a point, thence

2) S.30 degrees 38' 00"W., a distance of 100.00' to a point, thence

3) N.59 degrees 22'00"W., a distance of 40.00' to a point, thence

4) N.30 degrees 38'00"E., a distance of 100.0' in the point in the southwesterly sideline of Martense Avenue and place of BEGINNING.

----------------- [Space Below This Line For Acknowledgment]-----------------

State of New Jersey,

County of ___Bergen_____ , ss

I CERTIFY that on _February 03, 2009_ , ___AUDREY COOPER AND PATRICIA___

___BROWN_____

_____

_____

personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a)  was the maker of the attached instrument; and
(b)  executed this instrument as his or her own act.

JOHN J. GOLDING
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES 11/27/2011

_____     2-23-2009
Notary's Signature                    Date

___JoHN  GoLDING___
Notary's printed or typed name

My commission expires: _____

## **Exhibit C**

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790



12-055542  Assignment of Mortgage
V Bk: 01063 Pg: 1909-1909  Rec. Fee $43.00
John S. Hogan, Bergen County Clerk
Recorded 06/11/2012 08:56:06 AM

## CORPORATE ASSIGNMENT OF MORTGAGE

Bergen, New Jersey
"COOPER"

MERS #:                    SIS #: 1-888-679-6377

Date of Assignment: May 22nd, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE
MASTER, INCORPORATED, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901*E
VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: AUDREY COOPER AND PATRICIA BROWN BOTH UNMARRIED To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE MASTER, INCORPORATED, ITS
SUCCESSORS AND ASSIGNS
Date of Mortgage: 02/23/2009 Recorded: 03/12/2009 in Book/Reel/Liber:          Page/Folio:          as Instrument
No.:          In the County of Bergen, State of New Jersey.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $369,862.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE MASTER,
INCORPORATED, ITS SUCCESSORS AND ASSIGNS
On  5-22-12

By: _____
      Ryan Amato

Assistant Secretary

STATE OF Minnesota
COUNTY OF Dakota

On  5/22/12  , before me, Thomas Sutsada Sananikone, a Notary Public in Dakota County in the
State of Minnesota, personally appeared  Ryan Amato  , Assistant Secretary,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Thomas Sutsada Sananikone

Notary Expires: 1/31/16

> THOMAS SUTSADA
> SANANIKONE
> NOTARY PUBLIC-MINNESOTA
> My Commission Expires
> January 31, 2016

(This area for notarial seal)

**<u>Exhibit D</u>**



Wells Fargo Home Mortgage
MAC X9999-01N
1000 Blue Gentian Road
Suite 300
Egan, MN 55121-1786

Tel:  800 416 1472

LOAN MODIFICATION AGREEMENT
LOAN NUMBER:
PROPERTY ADDRESS 608 Martense Avenue
Teaneck NJ 07666
MIN:                    MERS Phone: 1-888-679-6377

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on
June 23, 2011, by and between Audrey Cooper and
Patricia Brown and (the "Borrower(s)") and
Wells Fargo Bank, N.a.  (the "Lender",
And Mortgage Electronic Registration Systems, Inc. (Mortgagee)
together with the Borrower(s), the "Parties").

WITNESSETH
WHEREAS, Borrower has requested and Lender has agreed, subject to the
following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth
and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged by the Parties, it is agreed
as follows (notwithstanding anything to the contrary in the Note and
Security Instrument dated 02/23/2009.)
1.  BALANCE. As of June 23, 2011, the amount payable under the Note
and Security Instrument (the "Unpaid Principal Balance") is U.S.
$ 357,685.02.
2.  EXTENSION. This Agreement hereby modifies the following terms of the
Note and Security Instrument described herein above as follows:
A. The current contractual due date has been extended from 06-01-11
to 09/01/2011. The first modified contractual due date is on
09/01/2011.
B. The maturity date has been extended from 03-39 (month/year) to
08/01/2041.    .
C. The amount of interest to be included (capitalized) will be U.S.
$ 4,471.05.
The amount of the Escrow Advance to be capitalized will be U.S. $4,094.43.
The amount of Recoverable Expenses* to be capitalized will be
U.S. $0.00.
The modified Unpaid Principal Balance is U.S. $ 366,250.50.
* Recoverable Expenses may include, but are not limited to: Title,
Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/
Property Inspections

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus
interest, to the order of the Lender. Interest will be charged on the
Unpaid Principal Balance of U.S. $ 366,250.50. The Borrower(s) promises
to make monthly payments of principal and interest of U.S. $ 1,883.04,
at a yearly rate of 4.625%, not including any escrow deposit, if
applicable. If on the maturity date the Borrower(s) still owes an amount
under the Note and Security Instrument, as amended by this Agreement,
Borrower(s) will pay this amount in full on the maturity date.
LM521/K8V/1

Together we'll go far





Wells Fargo Home Mortgage
MAC X9999-01N
1000 Blue Gentian Road
Suite 300
Egan, MN 55121-1786

Tel:  800 416 1472

E. Borrower agrees that certain amounts owed will not be capitalized, waived, or addressed as part of this Agreement, and will remain owed until paid. These amounts owed are referenced in the Cover Letter to this Agreement, which is incorporated herein, and are to be paid with the return of this executed Agreement. If these amounts owed are not paid with the return of this executed Agreement, then Lender may deem this Agreement void.

3.   NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.
4.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.
5.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).
6.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.
7. If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the 1-4 Family Modification Agreement Rider Assignment of Rents.
8.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Special Flood Hazard Area (SFHA).
9. This Agreement is conditioned upon the receipt of the 1-4 Family Modification Agreement Rider Assignment of Rents, if included, specified in the attached cover letter, which is incorporated herein by reference.
10.   That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Bank, N.a. .

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.

LM521/K8V/2

Together we'll go far

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



Wells Fargo Home Mortgage
MAC X9999-01N
1000 Blue Gentian Road
Suite 300
Egan, MN 55121-1786

Tel: 800 416 1472

CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Bank, N.a. , as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. _____ _____(Borrower(s) initial)

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from Wells Fargo, however, any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

Dated as of this _06_ day of _JULY_ , 20_11_ .

_____
Audrey Cooper
Signature

_Patricia Brown_
Patricia Brown
Signature

_____ 7-21-11
Wells Fargo Bank, N.a. ;

**Barrett Slade**
Vice President Loan Documentation

_____ 7/26/2011
Mortgage Electronic Registration Systems, Inc.

Name: __Robert Rosson__
Its: __Assistant Secretary__
LM527/K8V/3

SHAUNETTE A. SMITH
Notary Public - State of New York
No. 01SM6226314
Qualified in Queens County
My Commission Expires August 9, 2014

_Smith 7/6/11_

Together we'll go far



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801

**Exhibit E**

141612
**PHELAN HALLINAN & DIAMOND, PC**
400 Fellowship Road Suite 100
Mt. Laurel, NJ 08054
856-813-5500
Attorney for Plaintiff

| | |
|---|---|
| WELLS FARGO BANK, NA<br>    PLAINTIFF | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION<br>BERGEN COUNTY |
| | DOCKET NO: F-027257-12 |
| AUDREY COOPER, ET AL.<br>    DEFENDANT (S) | CIVIL ACTION<br>FINAL JUDGMENT |

This matter having been opened to the Court by Phelan Hallinan & Diamond, PC attorney's for plaintiff, and it appearing that service of the Summons and Complaint has/have been made upon the defendants, in accordance with the Rules of this Court and default having been entered against all non-answering defendants;and it further appearing that the Summons Notice and Complaint (Amendment if any) have been duly issued and returned served upon the following defendant, AUDREY COOPER, who has filed an answer, which has been stricken or withdrawn of record by the Court's Order dated November 22, 2013; and plaintiff's obligation, Mortgage and assignment of Mortgage having been presented and marked as exhibits by the Court, and proof having been submitted of the amount due on the plaintiff's Mortgage and sufficient cause appearing:

It is on this        3/3/15                                        ORDERED and

ADJUDGED that the plaintiff is entitled to have the sum of $435,389.74 together with interest at the Contract rate of 4.625% on $390,755.36 being the principal sum in default including advances from November 20, 2014 to        3/3/15

and lawful interest thereafter on the total sum due to plaintiff together with costs of this suit to be

taxed including counsel fee of $ __4503.89__ raised and paid in the first place out of the mortgaged premises and it is further ordered that the plaintiff, its assignee or purchaser at sale recover against the following defendants:

AUDREY COOPER

PATRICIA BROWN

and all parties holding under said defendants the possession of the premises so mentioned and described in the said Complaint with the appurtenances; and it is further

ORDERED and ADJUDGED that the mortgaged premises be sold to raise and satisfy the several sums of money due, in the first place to the plaintiff, WELLS FARGO BANK, NA, in the sum of $435,389.74 together with contract and lawful interest thereon to be computed as aforesaid, the plaintiff's costs to be taxed, with interest thereon, and that an execution for the purpose be duly issued out of this Court directed to the Sheriff of BERGEN County, commanding said Sheriff to make sale according to law of the mortgaged premises, as described in the Complaint, and out of the money arising from said sale, that said Sheriff pay in the first place, to the plaintiff, said plaintiff's debt, with interest thereon as aforesaid and said plaintiff's costs with interest thereon as aforesaid, and in case more money shall be realized by the said sale than shall be sufficient to satisfy such several payments as aforesaid, that such surplus be brought into this Court to abide the further Order of this Court and that the Sheriff aforesaid make a report of the aforesaid sale without delay as required by the rules of this Court, and it is further

ORDERED and ADJUDGED that the defendants in this cause, and each of them stand absolutely debarred and foreclosed of and from all equity of redemption of, in and to said mortgaged premises described in the Complaint, when sold as aforesaid by virtue of this judgment.

This judgment shall not affect the right of any person protected by the provisions of the New Jersey Tenant Anti-Eviction Statute (NJSA 2A: 18-61.1 et seq.).

_____
PAUL INNES, P.J.Ch

Respectfully Recommended
R. 1:34-6 OFFICE OF FORECLOSURE

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.